# EXHIBIT A

EXHIBIT 2

**FREE ASSOCIATED STATE OF PUERTO RICO**
**OFFICE OF THE COMMISSIONER OF FINANCIAL INSTITUTIONS**
**SAN JUAN, PUERTO RICO**

| | |
|---|---|
| **OFFICE OF THE COMMISSIONER OF FINANCIAL INSTITUTIONS,** Plaintiff<br><br>v.<br><br>**BANCRÉDITO INTERNATIONAL BANK & TRUST, CORP.,** Defendant | **CASE NO.: C-23-D-001**<br><br>**REGARDING:** Appointment of Receiver and Revocation of License |

**COMPLAINT AND ORDER OF INTERIM AND PERMANENT APPOINTMENT OF RECEIVER AND REVOCATION OF LICENSE**

### I.   INTRODUCTION

The Complaint and Order of Interim and Permanent Appointment of Receiver and Revocation of License ("Order") constitutes a summary emergency action that seeks to: (i) address an imminent danger to the security of the industry of international financial entities that operate from the jurisdiction of Puerto Rico, (ii) protect the public interest by guaranteeing the total and strict compliance with all of the laws and/or regulations applicable to the licenses issued by the Office of the Commissioner of Financial Institutions (*Oficina del Comisionado de Instituciones Financieras*, "OCIF") and the agreements between the OCIF and its regulated entities, and (iii) avoid any irreparable damage from being caused to the interests of Bancrédito International Bank & Trust, Corp. ("BIBTC"), or of the persons and entities with funds or securities in the institution and the creditors of said entity. Specifically, and as detailed below, the Order seeks to put an independent receiver in control of BIBTC to take possession and control of the assets and liabilities of BIBTC, and therefore, ensure fulfillment of the objective and terms of the Liquidation and Dissolution Plan ("Liquidation Plan"). Therefore, among other things, this Order has the effect of revoking the international banking entity license of BIBTC, which is necessary and fully consistent with the Liquidation Plan, under which BIBTC no longer operates as a going concern.

### II.   JURISDICTION AND POWERS OF THE OCIF

Law No. 4 of October 11, 1985, as amended, known as the "Law of the Office of the Commissioner of Financial Institutions," 7.L.P.R.A. (*Leyes de Puerto Rico Anotadas* [Annotated Laws of Puerto Rico]) § 2001 *et seq.*, ("Law No. 4-1985"), grants the OCIF the responsibility of auditing and supervising financial institutions that operate or do business in Puerto Rico. Pursuant to Law No. 4 of October 11, 1985, the OCIF is responsible for administering and enforcing Law No. 52 of August 11, 2012, as amended, known as the "International Banking Center Regulatory Act" ("Law No. 52-1989"), 7 L.P.R.A. § 232 *et seq.* According to this Act, the OCIF supervises and audits international banking entities organized pursuant to same.

Law No. 4-1985 and Law No. 38-2017, as amended, known as the "Uniform Administrative Procedure Act of the Government of Puerto Rico" ("Law No. 38-2017"), 3 L.P.R.A. § 9601, *et seq.*, as well as Regulation No. 3920 of June 23, 1989, as amended[1], known as "Regulation to Regulate the Adjudication Proceedings under the Jurisdiction of the Office

---

[1] Law No. 38-2017 repealed Law No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedure Act of the Government of the Free Associated State of Puerto Rico." Any reference to Law No. 170 of August 12, 1988 in any regulation, executive order or other official document from the Government of Puerto Rico will be understood to refer to this Law. Additionally, it will be understood that any law in which Law No. 170 of August 12, 1988 is referenced, is amended for the purposes of being replaced by this Law.

of the Commissioner of Financial Institutions" (Regulation No. 3920), authorize the Commissioner to issue any order that is necessary, appropriate and conducive to enforcing the laws and/or regulations under his/her jurisdiction.

In particular, Article 10 of Law No. 4, 7 L.P.R.A. § 2010, establishes the following:

**(a)**  In addition to the powers and authority transferred by this instrument, the Commissioner will have the powers and authority to:

…

**(4)** Bring forth any legal remedy, action or proceeding that is necessary or conducive to enforcing the objectives of this chapter or any other law or regulation, the compliance or supervision of which has been assigned to him/her, whether represented by his/her attorneys or by the Secretary of Justice, upon request for said purposes.

**(9)** Impose administrative penalties for violations to the laws that he/she manages, or the rules, regulations and orders that he/she approved or pronounced, as indicated in section 2020 of this title.

…

**(20)** …
(b) If as a result of an audit, exam or inspection or of a report produced by an examiner, it is demonstrated that the financial institution lacks a solid economic and financial situation, <u>or that it is operated or managed in such a way that the public or the persons and entities that have funds or securities under its custody are in danger of being defrauded—and in the absence of a specific provision in the law that regulates the financial institution in question and that similarly authorizes the Commissioner—the Commissioner may assume the management and administration of the financial institution, and promptly appoint a receiver</u>, which in the case of insured financial institutions may be its insurer. <u>The Commissioner must hold a hearing before issuing an order to place a financial institution under its management or that of a receiver.</u> Nevertheless, <u>the Commissioner may issue an interim order appointing an administrative receiver without holding a hearing when at its discretion, the situation of the financial institution is of such a nature that irreparable damage is being caused or may be caused to the interests of the financial institution, or of the persons and entities with funds or securities in the institution.</u> When the Commissioner issues an interim order for the purposes of <u>appointing a receiver</u>, he/she must notify the Governor of the details and merits of its determination and <u>must hold an administrative hearing within the ten (10) days following the date of notification of the order to determine if it will become permanent or be revoked.</u> The receiver thereby appointed will manage the financial institution in accordance with the provisions of the law and regulations that govern said institution and pursuant to the regulations issued by the Commissioner for receiverships or emergency measures declared under this section.

Said receivership will end with the total liquidation of the financial institution, if necessary, or whenever the operations of same, as determined by the receiver, allow, at the discretion of the Commissioner, for returning the administration of the institution to its employees and officials, duly elected and appointed, under the circumstances that the Commissioner stipulates. The Commissioner may set a reasonable compensation for the services of the receiver and the employees of same. <u>The decision of the Commissioner to assume the administration and management of a financial institution or to appoint a receiver may be reviewed by the Circuit Court of Appeals, through an appeal filed within ten days from the date of the decision.</u>

Emphasis added.

Additionally, Law No. 52-1989 grants the OCIF broad powers to revoke the license of an international banking entity and place said institution in a receivership:

In its pertinent part, section 3(a)(9) establishes that the OCIF may "…revoke or suspend a license to operate an international banking entity or impose other penalties that it may deem necessary and appropriate pursuant to its regulations; It is stipulated that any person whose license has been revoked or suspended or has had

[Initials in left margin:] [Illegible]                    TA 14

any other sanction imposed shall have the right to request a hearing in accordance with the regulation provided in section 2[3] of this law." Sections 18 and 19 also regulate the processes related to license revocation and subsequent receivership. Let us consider these.

> Section 18. – Revocation, Suspension or Relinquishment. (7 L.P.R.A. § 232n) (a) The license issued under Section 7 of this law will be subject to revocation or suspension by the Commissioner, upon notification and hearing pursuant to the regulations established in Section 21 of this law [Note: Current Section 23 renumbered by Article 9 of Law 110-2013], if: (1) An international banking entity, or the person which such international banking entity is a unit of, violates or fails to comply with any of the provisions of this law, any regulations of the Commissioner or any of the terms and conditions of the license to operate an international banking entity. (2) An international banking entity does not pay the annual license fee of five thousand dollars ($5,000). (3) The Commissioner discovers that the business or matters of an international banking entity are conducted in a way that is inconsistent with the public interest. (b) An international banking entity or the person which such international banking entity is a unit of, may at any time, and in the way established by the Commissioner's regulations, relinquish its license to operate an international banking entity.
>
> Section 19. – Dissolution. (7 L.P.R.A.§ 232o) (a) The Commissioner is authorized to appoint a receiver and order the dissolution of an international banking entity if the license of said international banking entity or the person which such international banking entity is a unit of is revoked or relinquished, pursuant to Section 16 of this law. (b) The appointed receiver must be a person of recognized moral solvency, with vast experience in the field of banking or finance, and his/her management in the international banking entity will be secured by a sufficient bond to be borne by the international banking entity in question. (c) The receiver must manage the international banking entity according to the provisions of this law and must: (1) **Take possession of the assets and liabilities, books, registries, documents and archives that belong to the international banking entity**; (2) collect all loans, charges and fees that are owed to the international banking entity; (3) pay the obligations and debts of the international banking entity, after having paid the necessary expenses of the receivership; (4) supervise the dissolution and liquidation of the international banking entity.

Emphasis added.

As a result of the aforementioned, and in accordance with the applicable legal provisions, the OCIF issues this Order. Furthermore, it stipulates that the exhibits mentioned in this order are filed therewith in a sealed envelope marked "confidential" for the sole benefit of BIBTC and its legal representative, except when there is an Order requiring its public disclosure.

### III.     INFORMATION ABOUT THE DEFENDANT

Name: **Bancrédito International Bank & Trust, Corp.**
Physical address: 250 Ave. Muñoz Rivera, Suite 1410
San Juan, Puerto Rico 00917
Mailing address: 250 Ave. Muñoz Rivera, Suite 1410
San Juan, Puerto Rico 00917
gdandrea@bancredito.com

### IV.     FINDINGS OF FACT

1. On August 8 and 9 of 2022, the BIBTC Liquidation Plan was signed. **Exhibit 1**.

2. The BIBTC Liquidation Plan was signed by BIBTC, the BIBTC shareholder, Bancrédito Holding Corporation (the "Shareholder") and the OCIF. *Id*.

3. The Liquidation Plan appoints the firm called Driven Administrative Services LLC as the Administrator. *Id*.

[Initials in left margin:] [Illegible]          TA 15

4. Article 4 of the Liquidation Plan indicates that BIBTC will cease to operate as a going concern 90 days after the signing of same. *Id.* BIBTC has already ceased to operate as a going concern.

5. Among the topics covered by the Liquidation Plan is an express mandate or obligation for the Board of Directors of the Bank to be composed of certain persons in particular. Therefore, Article 12 of the Liquidation Plan established the following:

> 12. <u>Board Constitution and Officers</u>. (A) As of the Effective Date, the Shareholder shall appoint as directors of the Corporation, Gregorio D'Andrea, Juan Carlos Eyherabide and Ramón Ponte, and such directors shall appoint Gregorio D'Andrea as President and Chief Executive Officer, Ana Faría as Secretary and Chief Legal Counsel, Denisse Aracena as Vice President and Chief Compliance Officer, and Jennifer López as Chief Financial Officer and Treasurer.

*Id*.

6. Said article indicates an express obligation of the Shareholder to appoint the following individuals as members of the Board of Directors for all purposes contained in the Liquidation Plan: Gregorio D'Andrea, Juan Carlos Eyherabide and Ramón Ponte. *Id*.

7. The Liquidation Plan also indicates the creation of a Cash Reserve to pay all of the depositors. *Id*.

8. As part of the liquidation, the plan requires the orderly payment of all of BIBTC's obligations and operating expenses, following an order of priority. *Id*.

9. Therefore, depositors will be first in line, followed by (among others) the payment of fines to regulators and finally the payments to the Shareholder or any related entity. *Id*.

10. Currently, there are some deposits (in excess of USD 10,000,000) that could not be satisfied, as well as the payment of fines to regulators. See **Exhibit 2**, Sworn Statement of the Sub-Commissioner Mónica Rodríguez.

11. The majority of these deposits were not originally included in the Cash Reserve, as said clients only had securities that were held under custody by BIBTC. Nevertheless, said securities reached their maturity and were converted into cash, which changed the nature of those assets under custody to deposits. *Id*.

12. Said change caused the Cash Reserve required in the Liquidation Plan to have insufficient cash balances. *Id*.

13. Meanwhile, BIBTC has over USD 30,000,000 in financial institutions abroad that belong to the bank. *Id*.

14. These institutions are: (A) STIF Fund Services Limited ("STIF") and (B) the affiliates of the Shareholder called Britannia Global Markets Limited and Britannia Global Investments Limited (collectively, "Britannia"). *Id*.

15. The Liquidation Plan expressly identifies the Britannia entities as related entities. **Exhibit 1**.

16. Despite multiple efforts and specific instructions to transfer said monies to (a) fund the Cash Reserve and (b) have enough money to pay other expenses and regulator fines, said transfers have not been possible. **Exhibit 2**.

17. The Shareholder has indicated to OCIF that said transfers have not been possible due to regulatory reasons, as BIBTC (who would be the counterparty of these transfers) now appears in the lists of entities with negative press or adverse legal proceedings. The Shareholder indicates that this, therefore, poses a problem for entities such as STIF and Britannia, as it could expose them to regulatory risks. *Id*.

18. The Shareholder has also indicated that it fears that said funds will be transferred from overseas to a North American jurisdiction, where they could be seized by United States authorities. *Id*.

19. Additionally, according to information provided to the OCIF, the Shareholder, through its President and CEO, Mr. Luis Zapata, affirmed in meetings with the BIBTC Board of Directors that the Shareholder had given instructions to Britannia (and other entities that are serving as a conduit to facilitate the transfer of funds) to "not do anything until the Shareholder tells them to." *Id*.

20. Furthermore, Mr. Zapata, in representation of the Shareholder, has sent serious written communications to the Directors of the BIBTC Board of Directors, affirming that he will take legal or corporate actions against said members once the Liquidation Plan is complete. See **Exhibit 3**.

21. **In said letter missive, the Shareholder indicates that it has no concern whatsoever that its actions or moves will have the effect of piercing the corporate veil of BIBTC.** *Id*.

22. In fact, as recently as December 22, 2022, Mr. Julio Herrera Velutini, who is the ultimate beneficial owner (UBO) of BIBTC, wrote the following communication directly to the BIBTC Directors:

    Dear Sirs:

    For several weeks, I have been formally and through the adequate channels requesting access to my account jherrera@bancredito.com. Unfortunately, you are not responding and therefore, I am obligated to remind you that I own the e-mail [and] the name of Bancrédito is (sic) registered under my property.
    Bancrédito Internacional Bank is the property of my family and the funds with which you pay your salaries are also our property.
    You have 48 hours or unfortunately there will be no (sic) other alternative than to take legal action against you.
    I hope you can understand the position you are in and the lack of will that this represents.
    I hope you have a Merry Christmas.

    **Exhibit 4**

23. All of the foregoing is putting a tremendous pressure on the BIBTC Board of Directors, with the consequence (desired or not) of preventing all phases of the Liquidation Plan from being carried out. **Exhibit 2**.

24. Currently, one of the main depositors that has yet to receive their monies has threatened to take immediate legal action if the situation is not resolved. **Exhibit 2**.

25. Additionally, on December 30, 2022, one of the banking entities that has served as a conduit to transact the flow of payments to BIBTC depositors, sued BIBTC in the United States District Court for the District of Puerto Rico in case no. 22-cv-01653, alleging, among other things, that BIBTC has not complied with the terms of the Liquidation Plan. **Exhibit 5**.

## V. CONCLUSIONS OF LAW

The aforementioned demonstrates that we are facing an extraordinary situation, where the interests of BIBTC of completing the Liquidation Plan, as agreed upon, are in serious danger. Additionally, the following are in danger: (i) the interests of the remaining depositors, (ii) the interests of the OCIF in seeking an orderly liquidation, and (iii) the interests of other regulators contained in the Liquidation Plan. Therefore, the OCIF has sufficient grounds to activate its broad powers to avoid irreparable damage from being caused to the interests of BIBTC, or the persons and entities with funds or securities in the institution and the creditors of said entity.

Currently, BIBTC related entities, namely the affiliates of the Britannia group, are in possession or control of monies belonging to BIBTC, despite clear and precise instructions from BIBTC for them to transfer said funds to accounts under the exclusive control of BIBTC. This goes against the express language contained in the Liquidation Plan and the spirit of same, as it gives related entities the *de facto* control of assets belonging to

[Initials in left margin:] [Illegible]                    TA 17

BIBTC, when said related entities can only receive monies or assets through the Liquidation Plan after all debts of the bank have been satisfied, which has not yet occurred. Said requirement is one of the crucial terms of the Liquidation Plan, which has currently not been able to be fulfilled. According to information in possession of OCIF, the Shareholder, directly and indirectly, took and/or is taking steps to prevent BIBTC's instructions for the transfer of said monies from being carried out.

Therefore, we are facing an unsustainable situation, where multiple parties are pursuing competing interests, even though the Liquidation Plan is clear in the order or payments and priorities. On one side, BIBTC has given specific instructions so that its funds arrive where the bank understands they need to arrive, so that BIBTC can discharge its responsibilities under the Liquidation Plan. On the other side, the Shareholder understands that said instructions are not necessary or in the best personal interest of the Shareholder. Thus, it has given instructions to related entities to not follow the bank's instructions. At the same time, Britannia and STIF, who operate from abroad, have reported having reservations about transacting with BIBTC, due to the regulatory risk involved. All of the foregoing is occurring while BIBTC ceased to have a Cash Reserve in breach of the terms of the Liquidation Plan and has been prevented from having possession and control of sufficient funds to cover the fines from its regulators.

In light of all of the aforementioned and of the pressures that the BIBTC Board of Directors has been under to comply with the terms and the intention of the Liquidation Plan, OCIF understands that the most prudent action is to revoke the BIBTC license and appoint an independent Receiver to complete said liquidation process and take possession and control of the assets and liabilities of BIBTC. Therefore, the firm **Driven Administrative Services LLC** is immediately appointed to serve as Receiver (hereinafter, "Receiver").

The appointment of the Receiver will allow for an independent third party to take control of the liquidation process, without having to be subjected to the current pressures that the Board of Directors currently has. Additionally, it will help facilitate BIBTC to take control of its funds, as the Receiver's instructions to take possession of the funds of BIBTC will not be carried out as part of an entity controlled by its management, but rather as an entity under the control of its primary regulator through an independent third party. In other words, said appointment will eliminate any regulatory risk claims from third parties or affiliates that currently prevent BIBTC from taking direct control of its funds.

Finally, BIBTC is advised that it will continue under the jurisdiction of the OCIF as an international banking entity until the OCIF has sufficient certainty that all of the necessary matters to complete the Liquidation Plan and the present receivership were fulfilled and in effect, and the Receiver thereby certifies it to the OCIF.

## VI.    MANDATE AND POWERS OF THE RECEIVER

In general terms, the Receiver must complete the BIBTC Liquidation Plan, following the order of priority established therein or any similar order of priority, as applicable. The Receiver will have flexibility in its mandate, to be able to handle situations not expressly detailed in the Liquidation Plan, while protecting the interests included in the Liquidation Plan in the order of priority established therein.

For these purposes, the Receiver must manage the international banking entity in accordance with the provisions of this order and must: (1) **Take possession of the assets and liabilities, books, registries, documents and archives that belong to the international banking entity, including the assets and funds that are currently abroad**; (2) collect all loans, charges and fees that are owed to the international banking entity; (3) pay the obligations and debts of the international banking entity, after having paid the necessary expenses of the receivership; (4) supervise the dissolution and liquidation of the international banking entity.

Additionally, the Receiver will have the power to bring forth any complaint that is necessary to vindicate BIBTC's rights over its property and assets and collect any amount owed, with the power to submit any complaint, lawsuit or proceeding in favor of BIBTC. Additionally, it will have the power to defend BIBTC and reach agreements in any complaint, lawsuit or proceeding against BIBTC. The Receiver may also appoint agents to carry out these mandates and take any other action that BIBTC would have been able to do and that is necessary and appropriate.

For purposes of clarity, the Receiver will be in a position similar to the one that the management and directors of BIBTC held prior to the receivership. Therefore, the management and directors of BIBTC are ordered to place the Receiver

[Initials in left margin:] [Illegible]                    TA 18

in control of the bank so that the Receiver, advised by any professionals that it deems necessary, may complete the remaining processes to finalize the liquidation of BIBTC.

The powers granted herein to the Receiver will be the broadest possible to complete all of the pending matters to liquidate BIBTC. See, as an example, *CFTC v. Weintraub*, 471 U.S. 343; 105 S. Ct. 1986; 85 L. Ed. 2d 372 (1986) (allowing a receiver to control and even waive attorney-client privilege of the entity under receivership); *C.W. Mining Co. v. Aquila, Inc.*, 636 F.3d 1257 (10th Cir. 2011) (determining that an entity in bankruptcy, a process similar to a receivership, acquires a new management in the role of the Receiver and with an objective that is very different from the one originally mandated to said management); *Badii ex rel. Badii v. Metropolitan Hospice, Inc.* 2012 WL 764961 (Court of Chancery Delaware, 2012) (Not Reported in A.3d) (allowing a receiver to carry out negotiations with governmental agencies, sch as the Internal Revenue Service).

As part of said mandate, the Receiver will have a fiduciary duty both to BIBTC creditors as well as to the BIBTC Shareholder, following the order of priority expressly agreed upon in the Liquidation Plan. See *CFTC v. Weintraub,* supra ("Perhaps most importantly, respondents' position ignores the fact that bankruptcy causes fundamental changes in the nature of corporate relationships. One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors."). Among the creditors of BIBTC are the depositors, who are first in line, and other creditors, such as regulators or service providers.

## VII.    ORDER OF APPOINTMENT OF RECEIVER

In addition to the general powers and mandate defined in the preceding section, which are incorporated by reference herein, the Receiver must manage the international banking entity in accordance with the provisions established herein without this being interpreted as a waiver and/or limitation of the power of the OCIF to impose additional requirements. Specifically, the Receiver must:

1. Take immediate possession of the assets and liabilities, books, registries, documents and archives that belong to BIBTC. In accordance with the foregoing, the Receiver must undertake and exercise the roles that the body of the Board of Directors of the international financial entity has as of today's date. Additionally, the primary objective of the Receiver will be to organize the matters of the entity so that the dissolution and liquidation process of BIBTC can be completed without further delay.

2. The Receiver will take the immediate control of the BIBTC bank accounts, as well as all of its investments and assets. The Receiver must simultaneously collect all loans, charges and fees that are owed to BIBTC. Additionally, it must be authorized to sign all documents that are necessary before financial institutions or third parties to carry out these duties.

3. The Receiver may hire any professionals that are experts in their specific field so that, at its discretion and in accordance with reasonability criteria, they may assist in the performance of its duties. Said professionals may include attorneys, accountants and forensic investigators, as well as any other professional that is necessary to carry out the Receiver's duties, in consideration of all of the specific circumstances of the international financial entity.

4. The Receiver will be in charge of paying the obligations and debts of BIBTC after having made the payment of the necessary expenses and those directly related to the receivership.

5. The Receiver must prepare an operating budget to be implemented in accordance with the financial condition of the entity, while also reviewing the entity's expenses and aiming to complete the liquidation without further delay.

6. The Receiver may conduct or mandate the audits of accounts and investigations that it deems necessary and/or appropriate and that the OCIF requests at its entire discretion. The Receiver will present the results of the matter investigated to the OCIF once the investigation is concluded, as applicable.

7. The Receiver must prepare quarterly reports during the first ten (10) days of the month following the quarter in question. Said reports will be submitted to the OCIF under oath and a digital copy will be sent to each current client of the entity that requests it within the ordinary course of their business with the institution.

[Initials in left margin:] [Illegible]          TA 19

8. As part of the efforts to liquidate the entity's assets, the Receiver must conduct its efforts and actions to: (i) maximize the value to be obtained by the sale or disposal of said assets; (ii) minimize the amount of loss realized in the resolution of the matters under its purview; and (ii) ensure a fair and equal treatment of any entity or person that is interested in acquiring said assets.

9. Upon receipt of this Order, the Receiver will establish an e-mail address to receive the claims from BIBTC clients. Furthermore, it will prepare a Registry of Claims and Debts of BIBTC and examine all payment claims that clients submit. The Receiver will have discretion when determining the appropriate means to reasonably notify all parties with an interest in the processes to be carried out by the Receiver. The Receiver may hire professionals or contract services for receiving and processing these claims so that at its discretion, they may assist in the preparation of the final liquidation report.

10. The Receiver will supervise the dissolution and liquidation of the international banking entity. Once it has completed its work, the Receiver must present a Final Liquidation and Distribution Report ("Final Report").

11. As a general rule, the monetary amounts obtained as part of the liquidation process will be distributed in the order of priority established in the Liquidation Plan. Nevertheless, if any unforeseen situation or a situation is not expressly included in said plan arises, the Receiver must follow the following order of priority to satisfy unsecured claims:
(a) Administrative expenses of the Receiver.
(b) Any deposit from clients of the institution, excluding any deposit, debt or obligation due as described in paragraph (e) of this same list.
(c) Any other senior or general debt of the institution.
(d) Any other obligation that has been subordinated to the payment of client deposits or general creditors.
(e) Any deposit, debt or obligation to shareholders, affiliates, related entities (as defined in the BIBTC Liquidation Plan"), subsidiaries or members of BIBTC.

12. The intention of this Order, pursuant to the powers granted to the OCIF in its organic law, is to give preference and legal certainty to the payment of BIBTC client deposits. For these purposes, and based on its broad powers aimed at achieving the fulfillment of the objectives of the laws under its jurisdiction, including Law No. 52-1988, the OCIF adopts on a supplementary basis and to the extent necessary, for the purposes of the process ordered from the Receivership established herein, the priority parameters developed by the FDIC in its applicable regulations, particularly those established in the "Resolution and Receivership" rules codified in Title 12 CFR Part 360.3.

13. The Receiver must sign the Final Report under penalty of perjury and must certify that all BIBTC assets have been liquidated or adequately accounted for and that the liquidation funds are available for distribution. The Final Report must be prepared as soon as all of the money has been collected, all of the claims have been reviewed or decided upon, and after the date for filing claims by clients and creditors has expired. The Final Report must be submitted to the OCIF before any distribution of funds to creditors or clients *and any claim submitted before the OCIF completes its review of the Final Report will be considered premature.*

14. The OCIF will review the Final Report to evaluate if the Receiver has adequately and reasonably administered the property of BIBTC. If there are significant deficiencies in the Receiver's administration or other problems or errors, the Receiver will be alerted of these so that it may take corrective measures. Once this review is complete, all parties with an interest in the liquidation process will be notified with the Final Report, as well as the proposed liquidation distribution. If there is a dispute between the Receiver and any party with an interest in the proposed distribution, the OCIF will resolve the matter with regard to the report and distribution. Parties with an interest may submit, *within a jurisdictional time period of thirty (30) days following the notification of the Final Report*, a written statement to the OCIF where they detail their position regarding the distributions and payments set forth in the Final Report and the reasons why they consider that these are incorrect. These claims will be processed pursuant to Regulation 3920 of the OCIF, which governs administrative adjudication proceedings in force. The Receiver will approve any document that is necessary to implement the information contained herein.

[Initials in left margin:] [Illegible]                    TA 20

15. The Receiver is not authorized to act as an international financial entity and its function is limited to processing the dissolution and liquidation established in this Order.

16. The Receiver will be authorized to directly request, from the Court of First Instance with jurisdiction, contempt proceedings against any party that violates the administrative orders issued and that are within its legal mandate to issue and enforce.

17. The disputes related to the performance of the Receiver in managing the dissolution and liquidation matters of the international financial entity may be brought to the attention of the OCIF only within the administrative adjudication proceeding identified in number 14 of this section. Any claim or dispute submitted before the start of the jurisdictional time period of thirty (30) days established in this section will be considered premature. The interested parties must exhaust these administrative remedies before taking their claims to the courts of justice of Puerto Rico.

18. The compensation provided in the receivership will be incorporated in the liquidation expenses budget and will be borne by BIBTC as part of its operating expenses.

19. The Receiver must, within 10 days of issuing this Order, arrange an adequate bond for an amount no less than $500,000 to be borne by BIBTC. The period provided herein may be extended by just cause.

In accordance with the provisions of this Order, the aggrieved party must submit its response to this Order in writing on or before **January 18, 2023 before 4:30 p.m.** to the Secretary of the Office of the Commissioner of Financial Institutions. As there is just cause, as detailed in the findings of fact and conclusions of law outlined herein, the OCIF, in exercise of its broad powers and discretion, determined to shorten the term to respond to this Order, in accordance with Rule 4 of Regulation 3920 of the OCIF.

In virtue of the aforementioned, **BIBTC is summoned to appear in a hearing to be held on January 20, 2023 at 9:30 a.m. at the Office of the Commissioner of Financial Institutions, Edif. Centro Europa, Suite 600, Ave. Ponce de León, Santurce Puerto Rico** to: (i) determine if this Order appointing a receiver is made permanent or revoked and (ii) give BIBTC the opportunity to be heard about the appropriateness of the revocation of its license and confirm, modify or nullify said determination. BIBTC is advised that it must appear with an attorney. If it fails to appear, the OCIF will continue with the processes to confirm, modify or nullify this Order.

**As this regards an extraordinary matter, the OCIF's decision to assume the administration and management of a financial institution or appoint a receiver** may be contested by BIBTC by filing a review appeal before the Appeals Court **within ten (10) days from the date of notification of said decision.**

Additionally, should BIBTC opt to not request reconsideration according to the general cautions indicated below, it may, as the party affected by the final determination of the OCIF **in relation to the revocation of its international banking entity license**, submit a review appeal to the Appeals Court **within thirty (30) days from the date of notification of same.**

## VIII.   GENERAL CAUTIONS

Pursuant to Law No. 38-2017 and Regulation No. 3920, BIBTC is cautioned that it may accept the remedies requested in the Order.

The OCIF indicated the topic for the hearing on **January 20, 2023**, where <u>all</u> of the matters related to this Order will be explained, in order to provide the aggrieved party the opportunity to be heard. Furthermore, following the conclusion of the formal adjudication proceeding, the OCIF may confirm, modify or nullify the Order, according to the recommendations of the Official Examiner appointed. The hearing request does not exempt it from presenting allegations in response to this Order within the aforementioned period, and it will continue to be in force until it is modified or nullified by the OCIF. The filing of a hearing request will neither suspend nor modify the terms of this Order in any way, unless the Commissioner determines otherwise.

[Initials in left margin:] [Illegible]                    TA 21

Upon the conclusion of the hearing, any party adversely affected by the resolution, or partial or final order of the OCIF (*except a determination on the appointment of the receivership, which has a term of 10 days, as indicated above*), may request reconsideration within twenty (20) days from the date the notification of the resolution or order is filed. It is stipulated that, if the filing date of the copy of the notification or the order of the agency is different from the date of deposit in ordinary mail or the send date by electronic means of said notification, the term will be calculated from the date of deposit in ordinary mail or the send date by electronic means, as applicable. The reconsideration request must be in writing, clearly stating the term "*Motion for Reconsideration*" as the title for the request. The filing of a *Motion for Reconsideration* will neither suspend nor modify the terms of this **ORDER** in any way, unless the Commissioner determines otherwise.

Within fifteen (15) days of the submission of said motion, the OCIF must consider it. If it denies it outright or does not act within the fifteen (15) days, the period to request a review will begin again from the moment said denial is notified or from the moment the fifteen (15) days expire, as the case may be. If any determination is made in its consideration, the period to request a review will begin from the filing date of a copy of the notification of the agency's resolution definitively resolving the motion for reconsideration. Said resolution must be issued and filed within ninety (90) days following the filing of the motion for reconsideration. Said resolution must be issued and filed within the ninety (90) days following the filing of the motion for reconsideration. If the OCIF accepts the motion for reconsideration but fails to take any action with regard to the motion within ninety (90) days of said motion having been filed, it will lose jurisdiction over same and the period to request the judicial review will begin from the expiration of said ninety (90) day period, unless the agency, due to just cause and within those ninety (90) days, extends the period for a resolution for a period that does not exceed thirty (30) additional days. If the filing date of a copy of the notification of the order or resolution is different from the date of deposit in ordinary mail or the send date by electronic means of said notification, the period will be calculated from the date of the deposit in ordinary mail or the send date by electronic means, as applicable.

A party adversely affected by an order or final resolution of the OCIF and that has exhausted all of the remedies established by the OCIF may submit a petition for judicial review to the Court of Appeals of Puerto Rico, within thirty (30) days according to Section 4.2 of Law No. 38-2017.

This Order does not relieve BIBTC of other violations that arise as a result of this Order or that the OCIF learns of following the filing of the notification of the order. In this case, the OCIF reserves the right to amend the Order to include allegations, violations, fines and additional remedies, subject to the applicable laws.

BIBTC is cautioned that pursuant to the provisions of Article 20(c) of Law No. 4-1985, the OCIF may impose an administrative fine not to exceed **FIVE THOUSAND DOLLARS ($5,000.00)** for each day that it fails to comply with the orders issued under the provisions of law, up to a maximum of **FIFTY THOUSAND DOLLARS ($50,000.00)**. In case of total or partial noncompliance with this Order, the OCIF, in aid of the statutory jurisdiction conferred by Law No. 4-1985, may request the Court of First Instance, Superior Court of San Juan, to enforce same, under penalty of contempt, and impose additional fines and penalties to those that the OCIF considers appropriate, with any other pronouncement that is applicable in law.

Issued in San Juan, Puerto Rico on today's date, January 11, 2023.

**TO BE RECORDED AND NOTIFIED.**

[Signature:] [Illegible]
**Natalia I. Zequeira Díaz**
Commissioner of Financial Institutions