IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BANCREDITO HOLDING CORPORATION, on its own behalf and derivatively for the benefit of and on behalf of Nominal Defendant BANCREDITO INTERNATIONAL BANK AND TRUST CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DRIVEN ADMINISTRATIVE SERVICES, LLC,<br><br>Defendant,<br><br>and<br><br>BANCREDITO INTERNATIONAL BANK AND TRUST CORPORATION,<br><br>Nominal Defendant. | CIVIL NO. 24-1039 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

The present case arises from the liquidation of a banking institution located in San Juan, Puerto Rico. Bancrédito Holding Corporation ("Plaintiff"), as sole shareholder of Nominal Defendant Bancrédito International Bank & Trust Corporation (the "Bank"), brings this direct and derivative shareholder action for the benefit and on behalf of the Bank against Defendant Driven Administrative Services, LLC ("Defendant" or "Driven"). Driven was appointed receiver in the Bank's liquidation proceedings by the Puerto Rico Office of the Commissioner of Financial Institutions (known as "OCIF" for its Spanish

acronym). In this capacity, Driven effectively stepped into the shoes of the Bank's management and Board of Directors to manage the Bank's liquidation.

Plaintiff alleges Driven breached its fiduciary duties, as well as incurred in negligence and violations of the Puerto Rico General Corporations Act. Plaintiff contends that Driven's actions, while purportedly undertaken in the Bank's best interests, have instead caused harm to it and the Bank. For this reason, the Bank was included as a Nominal Defendant in this case.

Before the Court now is Defendant's "Motion to Dismiss First Amended Verified Direct Complaint and Derivative Shareholder Complaint" where it avers the Complaint must be dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. (Docket No. 38). Before the Court are also Plaintiff's opposition thereto, Defendant's Reply, and Plaintiff's Sur-Reply. (Docket Nos. 41, 46, and 60).

For the reasons explained below, Defendant's Motion to Dismiss is GRANTED. (Docket No. 38).

## STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A "short and plain" statement needs only enough detail to provide a defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007); Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007). To show an entitlement to relief, a complaint must contain enough factual material "to raise a right to relief above the speculative level

. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965.

When addressing a motion to dismiss under Rule 12, the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009). Under Twombly, not much is required, but a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965. A plaintiff is required to present allegations that nudge the claims "across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

Relevant to this case, the Court adds that the Court of Appeals for the First Circuit treats "a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387 (1st Cir. 2001). For this reason, the Court may consider "documents the authenticity of which are not disputed by the parties," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint." Centro Médico de Turabo, 575 F.3d at 15 (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)); see also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

<u>Bancrédito Holding Corporation, et al. v. Driven Administrative Services, et al.</u>
Opinion and Order
Civil 24-1039 (CVR)
Page 4

---

## STATEMENT OF FACTS[1]

The Court accepts Plaintiff's allegations as true for purposes of the Motion to Dismiss. <u>Ponsa-Rabell v. Santander Sec., LLC</u>, 35 F.4th 26, 30 (1st Cir. 2022); <u>O'Brien v. Deutsche Bank Nat'l Tr. Co.</u>, 948 F.3d 31, 35 (1st Cir. 2020).

Plaintiff is a New York corporation with its principal place of business in Florida, and is the owner of the Bank's capital stock. Prior to entering into receivership, the Bank held a license to provide financial services to non-local persons and banks. Plaintiff was and remains the Bank's sole shareholder.

Defendant is a financial advisory firm, and a Puerto Rico limited liability company. Defendant's sole member is another Puerto Rico limited liability company, Driven P.S.C., an accounting firm comprised of five (5) Puerto Rico residents with its principal place of business in Puerto Rico. Nominal Defendant the Bank is a Puerto Rico corporation.

In pertinent part, on August 2022, Plaintiff, the Bank, and OCIF entered into a voluntary Liquidation Plan (the "Liquidation Plan") for the Bank. The Liquidation Plan appointed Driven as administrator for the Bank during the process, it in turn was charged with paying and discharging the Bank's liabilities and obligations. On January 11, 2023, OCIF issued a Receivership Order against the Bank (the "Receivership Order"), which revoked the Bank's license and officially placed it into receivership. Driven was appointed the Bank's receiver, it took control of the Bank's assets and liabilities, and stepped into the shoes of the Bank's Board of Directors and officers during the process. The Receivership Order further detailed Driven's broad duties and responsibilities as receiver

---

[1] All facts are derived from the Amended Complaint. (Docket No. 36).

and set a hearing to give the Bank an opportunity to contest the Liquidation Order.

Plaintiff herein filed a motion to intervene before the OCIF's proceedings as well as a motion to dismiss the Receivership Order, where it detailed several objections, it had to its terms. On January 28, 2023, the Bank, Plaintiff and OCIF reached an agreement, and as result thereof, executed a settlement agreement on March 13, 2023 (the "Agreement"). Under the terms of the Agreement, Plaintiff agreed to, among others: (1) withdraw its objections to the Receivership Order; (2) consented to the appointment of Driven as receiver and to the broad powers and authority delegated to it; (3) waived its right to challenge the receivership and/or the designation of Driven as such; (4) consented to the revocation of the Bank's license and waived its right to a hearing; (5) agreed to the provisions of the Liquidation Plan not inconsistent with the Settlement Agreement; (6) agreed that OCIF would continue to have jurisdiction over the Bank and its affairs until all matters contemplated in the Receivership Order, the Liquidation Plan, and the Settlement Agreement had been fully satisfied (collectively referred to as the "Receivership Documents"); and (7) agreed that OCIF would retain exclusive jurisdiction as allowed by law to address any future controversies arising from or in connection with the Receivership Documents. (Docket No. 39, Exhibit 1).

Plaintiff now brings this action claiming that Driven negligently performed its duties when it failed to cooperate with Plaintiff in the liquidation process, engaged a non-compliant escrow agent for the Bank's funds, refused to respond to formal record requests, did not involve Plaintiff in an investigation undertaken by the Unites States Treasury Department's Financial Crimes Enforcement Network ("FinCEN") which resulted in $14.7 million civil money penalty against the Bank, and illegally and

unnecessarily sold Plaintiff's costly artwork.  (Docket No. 36).  Plaintiff proffers that Defendant is liable for its actions, alleging claims for breach of fiduciary duty, violations of the Puerto Rico General Corporations Act Articles 4.03 (fiduciary duty) and 7.10 (inspection of books and records), P.R. Laws Ann. tit. 14, §§ 3563, 3650, and for negligence and conversion under the Puerto Rico Civil Code Article 1536, P.R. Laws Ann. tit. 31, § 10801 (2020), both directly and derivatively.

## LEGAL ANALYSIS

Defendant proffers in its Motion to Dismiss that the case should be dismissed on two (2) separate grounds.  First, under Fed. R. Civ. P. 12(b)(1), it alleges the Court lacks subject-matter jurisdiction because there is no diversity because the Bank's interests as a nominal party cannot be deemed antagonistic to Plaintiff.  Therefore, the Bank must be realigned as a co-Plaintiff, and so doing would destroy diversity.  Second, under Rule 12(b)(6), the Amended Complaint fails to state a claim upon which relief can be granted, as the Agreement between the parties in the OCIF's proceedings contains a mandatory forum selection clause that grants OCIF exclusive jurisdiction of the claims in the present case.

Plaintiff proffers in opposition that Driven's actions on the Bank's behalf have caused it harm, and therefore, the antagonistic relationship between the Bank and Plaintiff renders their relationship untenable.  Plaintiff argues, as to the forum selection clause contained in the Agreement, that is inapplicable to the claims raised now because this case deals with shareholder rights and negligence, which fall outside OCIF and the Agreement's jurisdiction.  Plaintiff does not dispute Driven had the authority to carry out its actions, but clarifies that its gripe is with the way it acted.  That is to say, Defendant

had an obligation to carry out its mandate in a way that did not breach of its fiduciary duties to the Bank.  In the alternative, Plaintiff avers that the forum selection clause violates its due process rights to a neutral adjudicator and further, that is unenforceable as written under the landmark case of M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907 (1972) as was the product of fraud and overreaching.

Driven argues in its Reply that Plaintiff and the Bank's interests are completely aligned, insofar as if Plaintiff were to prevail in this case, any recovery would be to the Bank's benefit.  As to OCIF's jurisdiction, it argues the agency can adjudicate Plaintiff's claims because the disputes in the present case were specifically covered by the Agreement.  The fiduciary relationship between Plaintiff and Driven, arises from the Receivership Order and any claim for any breach of those duties must stem from that same Order, which is subject to the Agreement's forum selection clause.  As to the clause itself, Defendant proffers it is mandatory and enforceable, and Plaintiff cannot overcome the heavy burden required under Bremen to set it aside.  Regarding the due process claim, Driven argues that the Puerto Rico Administrative Procedure Act (known as "LPAU" for its Spanish acronym) and OCIF's regulations guarantee Plaintiff adequate procedural safeguards.  Finally, as to the claims of corporate malfeasance under  Article 7.10  (the "Article 7.10 claims") of the Puerto Rico General Corporations Act,  they must also be dismissed because the statute confers exclusive jurisdiction over any claim arising thereunder to the Puerto Rico's Court of First Instance.

Plaintiff's Sur-Reply asserts that Defendant failed to adequately rebut its due process arguments and raises questions regarding OCIF's impartiality, arguing that Driven is so closely entwined with OCIF in the present dispute that OCIF cannot fairly

adjudicate Plaintiff's claims. It further states that exercising supplemental jurisdiction over the Article 7.10 claims in the case at bar is proper. Plaintiff also advances a novel argument, namely, that Article 7.10's mandate giving the Puerto Rico Court of First Instance exclusive jurisdiction of those claims is unconstitutional because it divests this Court of jurisdiction it otherwise possesses.

The Court begins and ends with Defendant's second argument, that the mandatory forum selection clause grants exclusive jurisdiction of the claims herein raised to OCIF and warrants dismissal of Plaintiff's claims. The Court also agrees with Defendant that it lacks jurisdiction to hear Plaintiff's Article 7.10 claims.

### 1. The Receivership Order and the Agreement.

The Receivership Order, titled "Complaint and Order for the Provisional and Permanent Designation of a Receiver and License Revocation", served several purposes. It revoked the Bank's international license, detailed OCIF's general jurisdiction and power to order the Bank's liquidation, discussed the receiver's assignment and its broad powers, and appointed Driven as such. It also set a hearing to determine whether said provisional Order would become permanent and at the same time, set a hearing so the Bank could voice any objections thereto.

In relevant part, Part V, item 14 of the Receivership Order reads as follows:

The Receiver shall oversee the dissolution and liquidation of the international financial entity. Once it has completed its work, the Receiver shall submit a Final Liquidation and Distribution Report ("Final Report"). If there are material deficiencies in the Receiver's administration or other problems or errors, they will be pointed out to the Receiver, so that it may take any corrective measures. Once this review is completed, the Final Report, as well as the liquidated distribution proposed, will be reported to all parties with an interest in the liquidation process.

(Docket No. 39, Exhibit C, p. 8).

Item 17 of the same section further states that,

Any disputes related to the Receiver's performance in handling the affairs of dissolution and liquidation of the international financial entity may be brought to the attention of the OCIF, only within the administrative adjudication process identified in point number 14 of this section.

(Docket No. 39, Exhibit C, p. 9).

On the other hand, the Agreement indicates in its pertinent parts:

BHC agrees to withdraw its objection to the Receivership Order and agrees to the appointment by OCIF of a receiver for BIBTC pursuant to the Receivership Order (the "Receivership") BHC and BIBTC agrees to the appointment of Driven Administrative Services LLC ("Driven"), as the receiver (the "Receiver"). BHC and BIBTC fully and irrevocably waive their right to challenge the Receivership and/or the designation of Driven as the Receiver for BIBTC.

. . .

In accordance with such powers, OCIF will continue to have jurisdiction over BIBTC and its affairs, until all matters contemplated in the Receivership Order, the Liquidation Plan and this Agreement have been fully satisfied (collectively, the "Receivership Documents").

. . .

OCIF will request the Receivership Case be dismissed and closed.  The parties understand that and agree that the Receivership Order as modified by this Settlement Agreement will be in full force and effect and that OCIF will retain exclusive jurisdiction as allowed by law to address any future controversies arising from or in connection with the Receivership Documents.

. . .

The Parties acknowledge that this Settlement Agreement is executed voluntarily by each of them without any duress or undue influence on the part of, or on behalf of, any of them. The Parties further acknowledge that they have or had the opportunity for representation in the negotiations for, and in the performance of, this Settlement Agreement by counsel of their choice and that they have read this

Settlement Agreement and have had it fully explained to them by their counsel, and that they are fully aware of, and agree to, the contents of this Settlement Agreement and its legal effects.

(Docket No. 39, Exhibit A, §§1, 1(b), 11(c) and 19).

2. The Agreement's reach.

The present case boils down to whether the Agreement the parties signed in the OCIF's proceedings covers the claims raised before the Court and if so, whether the forum selection clause it contains is permissive or mandatory. The Court finds that the Agreement signed squarely applies to the claims raised now with the exception of the Article 7.10 claims, and that the forum selection clause is mandatory.

Under the Puerto Rico Civil Code, the terms of a contract have legal force between the contracting parties, their successors and third parties. P.R. Laws Ann. tit. 31, § 9754 (2020). Under Puerto Rico law, the meaning of a written or verbal expression used in a legal transaction is the word's literal meaning, or the meaning it has in the common language. P.R. Laws Ann. tit. 31, § 6342 (2020). Additionally, "[a] term is considered 'clear' when it is sufficiently lucid to be understood to have one particular meaning, without room for doubt." López & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 64 (1st Cir. 2012); Jiménez v. Triple S. Inc., 154 F.Supp.2d 236, 238 (D.P.R. 2001).

The terms of the Agreement are clear and gave Driven broad, plenary powers. Pursuant to those terms, not only did Plaintiff and the Bank "fully and irrevocably" waive any right to challenge the receivership and to the designation of Driven as the receiver, but they also agreed that Driven had "absolute discretion" to engage the legal counsel that it deemed appropriate to safeguard the Bank's rights and interests; "absolute discretion" to choose a financial institution in which to open an escrow account; "exclusive authority"

to negotiate, settle or reach any resolution on behalf of the Bank with FinCEN or the USDOJ; had "ultimate discretion" as to whether or not to act upon proposals submitted by Plaintiff as part of the liquidation process; and agreed that works of art would be subject to the Liquidation Plan and Driven was "free to dispose of them pursuant to the Liquidation Plan and the Receivership Order." (Docket No. 39, Exhibit A).

All these claims are currently being raised by Plaintiff in the present case. Plaintiff evidently made several concessions in the Agreement before OCIF, and those same items are the crux of Plaintiff's complaint before this Court. Notwithstanding the fact that Plaintiff and the Bank clearly and irrevocably waived their right to challenge the receivership, Plaintiff now brings the present case for that same purpose, challenging Defendant's alleged actions as the Bank's receiver.

Additionally, the Receivership Order specifically indicated that OCIF would entertain any disputes over the "Receiver's performance in handling the affairs of dissolution and liquidation of the international financial entity." (Docket No. 39, Exhibit C, p. 9). Thus, to the extent that the Amended Complaint alleges the existence of a fiduciary relationship between Plaintiff and Defendant and argues a breach of said relationship based on the terms of the Receivership Order, the Court finds Plaintiff's claims in the case at bar directly pertain to Defendant's responsibilities as receiver, and are thus subject to OCIF's continuing jurisdiction.

The Court further notes that the Agreement was one which Plaintiff entered into of its own volition, and with the advice of not one (1), but two (2) law firms. To come now and artfully claim that it is not challenging Defendant's authority but instead the way in which it carried out its duties is a non-starter.

3. Permissive v. mandatory.

Having established that the causes of action raised by Plaintiff fall under the purview of the Agreement signed by Plaintiff, the Bank and OCIF, the Court now turns to the issue of the forum selection clause.

Under federal law, the threshold question in interpreting a forum selection clause is whether the clause is permissive or mandatory. "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Centro Médico de Turabo, 575 F.3d at 17.

The Court examines the "specific language of the contract at issue" to determine whether the provision's terms reflect "clear language indicating that jurisdiction and venue are appropriate exclusively" in a designated forum. Silva, 239 F.3d at 388. This inquiry usually hinges on whether the provision includes any terms with a mandatory connotation, such as "shall" or "must." See Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014) (the word "shall" is mandatory); Haddock-Acevedo v. Bd. of Governors of Univ. of Puerto Rico, 615 F.Supp.3d 78, 82-83 (D.P.R. 2022) (collecting cases).

The Agreement in question clearly states that OCIF "will continue to have jurisdiction over BIBTC and its affairs, until all matters contemplated in the Receivership Order, the Liquidation Plan and this Agreement have been fully satisfied." It further states, that OCIF "will retain *exclusive jurisdiction* as allowed by law to address any future

controversies arising from or in connection with the Receivership Documents." (emphasis added). (Docket No. 39, Exhibit A). This choice of words clearly indicates that the clause is mandatory, and that OCIF is the designated forum to hear these causes of action, to the exclusion of all other forums. See Centro Médico de Turabo, 575 F.3d at 17 n. 5 (including "exclusive" in a list of "typical mandatory terms"). The word "exclusive" is strong and specific, and distinctly demonstrates that the parties intended only for OCIF to hear any future claims arising out of the Agreement.

This conclusion is in line with other cases that have found that the use of the word "exclusive" to be mandatory. Compare Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson, Inc., 201 F.3d 15 (1st Cir. 2000) ("agree to submit to the jurisdiction" of the courts of the Commonwealth of Puerto Rico was permissive) and Redondo Constr. Corp. v. Banco Exterior de España, S.A., 11 F.3d 3 (1st Cir. 1993) (finding that "expressly submits to jurisdiction of all Federal and State Courts" of Florida did not "negatively exclude any other proper jurisdiction") with Tantalos v. Toro Verde Enterprises, LLC, 651 F.Supp.3d 488, 495 (D.P.R. 2023) (finding that the words "shall" and "exclusively" made the clause mandatory); Verner Johnson, Inc. v. CSA Architects & Engineers LLP, Civil No. 10-1123 (CCC), 2010 WL 2900387 *1 (D.P.R. Jul. 16, 2010) (finding that the parties "irrevocably submit" to the jurisdiction of the courts of the Commonwealth of Puerto Rico was mandatory); Centro Médico de Turabo, 575 F.3d at 17 (the words "hereby expressly submits to jurisdiction" were deemed to be mandatory); Silva, 239 F.3d at 389 (the word "'must' expresses the parties' intention to make the courts of Illinois" the exclusive forum). In the present case, the use of the word "exclusive" tips the balance in favor of finding that the clause is mandatory and not permissive as argued by Plaintiff.

Plaintiff proffers in opposition that OCIF's powers are limited to those it has by law, and that as a government agency, it can only exercise those powers exclusively delegated to it.  Pointing to Puerto Rico's corporate law, it argues this case is about shareholder's rights and negligence, matters which fall outside OCIF's jurisdiction. However, this case is not a run of the mill shareholder's derivative case.  It arises out of the ashes of an inoperative bank undergoing liquidation under a receivership process ordered and overseen by OCIF, the only agency specifically mandated by law in Puerto Rico to do so.  As candidly argued by Defendant, OCIF was granted broad powers to regulate financial institutions in Puerto Rico and is the only entity authorized to place any financial institution under receivership and oversee the receivership and ultimate liquidation process in the Bank's case.  See P.R. Laws Ann. tit. 7, § 2010 (b).

It was in the exercise of this authority that OCIF placed the Bank in liquidation and designated Driven as receiver.  Plaintiff voluntarily agreed to the liquidation process, to the designation of Defendant and to its broad powers as receiver, and waived its right to challenge the receivership.  Plaintiff also specifically waived any claim regarding the extensive powers Defendant had to engage and carry out the FinCen's negotiations, the choosing of the escrow agent, disposing of the artwork, and regarding consultation rights, all issues it now raises in this case.  Thus, the claims raised by Plaintiff in the Amended Complaint fall squarely within the matters addressed by the terms of the Agreement, as well as within the liquidation proceedings handled by OCIF, pursuant to its broad statutory powers.

The Court further notes that Plaintiff voluntarily signed the Agreement with OCIF, which stated that said agency would have exclusive jurisdiction to handle any future

controversies arising from the Receivership Documents.  To now argue that OCIF lacks

jurisdiction to enforce the terms Plaintiff itself agreed to and which pertain to matters

under OCIF's exclusive domain simply rings hollow.  See P.R. Laws Ann. tit. 31, § 9754

(2020) (agreed-upon contract terms have legal force between the parties); Kalkey v.

Euromodas, Inc., Civil No. 22-1245 (PAD), 2023 WL 8587965, at *9 (D.P.R. Dec. 11,

2023).

> 4.  The Bremen factors.

Defendant proffers that the Agreement's clause is enforceable under Bremen and

Plaintiff cannot undercut the presumption of the clause's validity.  To the contrary,

Plaintiff contends that Bremen renders the clause unenforceable as it was the product of

fraud and overreaching, and is unjust.  Plaintiff further argues that the clause falters

under a due process analysis because OCIF is unable to be an impartial adjudicator.  As

to the Article 7.10 claims, it claims they should be heard by this Court and not the Puerto

Rico Courts.

A forum selection clause will be deemed *prima facie* valid and will be enforced

unless the opposing party, in this case Plaintiff, meets the heavy burden of showing its

unreasonableness, unfairness, that the clause was procured by fraud or overreaching, or

that "enforcement would contravene a strong public policy of the forum in which suit is

brought, whether declared by statute or by judicial decision." Bremen, 407 U.S. at 15, 92

S.Ct. at 1916.  Therefore, to defeat Defendant's dispositive motion, Plaintiff must establish

that the clause was the product of fraud or overreaching, to wit, that its enforcement

would be unjust; that proceedings before OCIF will be so gravely difficult and

inconvenient that it will be deprived of its day in court; or that enforcement of the clause

would contravene a strong local public policy.  Id.; Meta Med, LLC v. Insulet Corp., Civil No. 23-1546 (CVR), 2024 WL 1763610, at *9 (D.P.R. Apr. 23, 2024).

The Court applies federal common law, as there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses. Tantalos, 651 F.Supp.3d at 495;  Silva, 239 F.3d at 387;  Stereo Gema, Inc. v. Magnadyne Corp., 941 F.Supp. 271, 276 (D.P.R. 1996) (citing Unisys Puerto Rico v. Ramallo Bros. Printing, Inc., 128 D.P.R. 842, (1991)) (stating that the Puerto Rico Supreme Court has adopted the federal jurisprudence regarding general enforceability of forum-selection clauses).

Plaintiff's first claim, that the clause is the product of fraud, is without merit inasmuch as the Agreement specifically stated not only that it was voluntarily executed by each of the parties without any duress or undue influence, but also that the parties were aided and represented by counsel of their choice, presumably able and competent counsel, who fully explained the terms and consequences of the Agreement to them. (Docket No. 39, Exhibit A, ¶ 19).  In fact, the law firm that represents Plaintiff in the present case is the same law firm that signed the Agreement before OCIF on its behalf.

The overreaching and public policy arguments fare no better.  Plaintiff asserts that OCIF exceeded its authority in "granting itself" exclusive jurisdiction over disputes that the legislature allegedly designated for the Courts.  Plaintiff cites no caselaw or statute for this novel argument, which in any event, suffers from the same fate as the others.  OCIG is the agency designated by law to exclusively undertake and handle financial liquidation proceedings.  As such, the Court cannot see how an agency's attending to the very issues

that it is exclusively tasked with overseeing can constitute overreaching and go against public policy. Plaintiff points to nothing in the record to sustain this argument.

On the contrary, public policy is furthered by having parties abide by agreements they validly entered into. "[E]nforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system". Scotiabank de Puerto Rico v. Residential Partners S.E., 350 F.Supp.2d 334, 339 (D.P.R. 2004). Overseeing liquidation proceedings and ensuring all issues that arise thereunder are resolved is precisely what OCIF is tasked by law with doing. See P.R. Laws Ann. tit. 7, § 2010. As properly argued by Defendant, administrative agencies have long been conferred quasi-judicial powers to adjudicate disputes and perform adjudicatory functions, where, as here, there exists an opportunity for judicial review of the agency's final determination. P.R. Laws Ann. tit 3, § 9641.[2] There is no automatic mandate that a dispute, such as one in the case at bar, which is presently overseen by the agency tasked by law to perform it, be seen instead before a court of law.

This reasoning ties in with Plaintiff's "unjust" argument, that OCIF allegedly generates "a significant portion"[3] of Defendant's business and this situation deprives Plaintiff of its right to an unbiased adjudicator. This is a wholly self-serving allegation devoid of any evidentiary support which was not even mentioned in the Amended Complaint. Thus, this argument is also a non-starter. Plaintiff itself specifically consented to Driven's appointment as a receiver as well as to the broad powers it was

---

[2] See Docket No. 39, Exhibit C, p. 10, the Receivership Order, where it indicates, "[a]ny party adversely affected by an order or final decision of the OCIF and that has exhausted all of the remedies provided for by the OCIF may file a request for judicial review with the Court of Appeals of Puerto Rico within a period of 30 (thirty) days, in accordance with Section 4.2 of Law No. 38-2017."

[3] Docket No. 41, p. 24.

given, waived any right to challenge it and agreed to bring forth any issues arising under the Agreement before OCIF. Plaintiff seemingly tied its own hands by virtue of the Agreement, and is now bound by that decision.

The Court finds that Plaintiff's due process argument is equally unavailing. If Plaintiff were to object to the "Receiver's performance in handling the affairs of dissolution and the liquidation of the international entity"[4], as called for in clauses 14 and 17 of the Receivership Order, this matter would be governed by the Puerto Rico's LPAU. Among other things, LPAU affords Plaintiff the right to have a hearing before an impartial examining officer or an administrative judge, the right to present evidence and the right that any decision issued by the agency based on the record. P.R. Laws Ann. tit 3, §§ 9641, 9643. If Plaintiff does not agree with OCIF's conclusions, it may then seek appellate review before the Puerto Rico Court of Appeals,[5] where it may challenge any alleged lack of impartiality, and may seek ultimate review from the Puerto Rico Supreme Court. See P.R. Laws Ann. tit, 3, §§ 9672, 9675, 9676, 9677; Assoc. Condómines v. Meadows Dev., 190 D.P.R. 843, 847 (2014) (right to appeal an agency determination via judicial review is part of the due process guaranteed by the Puerto Rico Constitution); Stitzer v. Univ. of Puerto Rico, 617 F.Supp. 1246, 1256 (D.P.R. 1985) ("[O]nce the law provides the right to judicial review of an administrative agency decision, such right becomes part of the aggrieved person's due process of law").

Plaintiff has also not shown that the forum in question, an administrative proceeding before the agency with full judicial review, is so inconvenient as to somehow

---

[4] All rights which are clearly spelled out in the Receivership Order. See Docket No. 39, Exhibit C, pp. 8-9.

[5] Id., at p. 10.

deprives it of its day in court.  Plaintiff avers that "should an unfavorable decision issue, Plaintiff's only recourse is appeal - a forum in which it is precluded from presenting new evidence for review." (Docket No. 41, p. 24).   However, that would be the case in any forum where a claim was initially brought, including this one, where the appellate court would be precluded from evaluating any new evidence and can only review the same record and evidence that was presented before the district court.   See Fed. R. App. P. 10(a); United States v. González-Rodríguez, 859 F.3d 134, 137 (1st Cir. 2017) (evidence not presented before the district court is not properly part of the record and is disregarded); Worcester v. Filene's Basement, Corp., 125 F.3d 842 (1st Cir. 1997) ("Of course, this court does not consider arguments or evidence not presented to the district court").  In any event, the Court notes that Plaintiff has already availed itself of the very due process element it now cries foul about, by virtue of the intervention it purposely sought before OCIF in its challenge of the Receivership Order, and which eventually resulted in the Agreement it now seeks to extricate itself from.

The Court reminds Plaintiff that under Puerto Rico law good faith is presumed, and the burden to disprove it falls upon the party challenging such good faith.  P.R. Laws Ann. tit. 31, §6342 (2020); Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503, 519 (1988); Palatine Hill Ass'n Corp. v. Balducci, Civil No. AU2022CV00085, 2024 WL 1067929, at *11 (T.C.A. Feb. 16, 2024).  Besides presenting conclusory allegations that OCIF is biased in a proceeding Plaintiff has yet to even file, Plaintiff has not shown any bad faith on the agency's part.  For these reasons, Plaintiff has not evidenced that the longstanding procedures governed by LPAU are procedurally insufficient or that

complying with the mandatory forum selection, that it purposely entered, somehow violates its due process rights.

In sum, the Court finds that Plaintiff has been unable to meet the Bremen factors to overcome the presumption that the forum selection in the Agreement it voluntarily signed is somehow invalid and should not be honored.  Under these circumstances, the Court is disinclined to disturb the parties' freely contracted choice of venue.  See Antilles Cement Corp. v. Aalborg Portland A/S, 526 F.Supp.2d 205, 208 (D.P.R. 2007) ("Disregarding the parties' choice of forum is reserved for those extreme situations where the evidence shows that not only will it be 'gravely difficult and inconvenient' to face trial threeat but also 'that he will for all practical purposes be deprived of his day in court'") (cleaned up); Royal Bed and Spring Co., Inc. v. Famossul Industria e Comercio, 906 F.2d 45 (1st Cir. 1990) (inconvenience not enough; a party must be deprived of its day in court). Accordingly, the Court concludes that Plaintiff has failed to establish that enforcing the clause was the result of fraud or overreaching, is sufficiently inconvenient to make it invalid, or that it is unreasonable or unjust.  This was what Plaintiff agreed to, and it must now adhere to that bargain.

In view of the above, the Court finds that the Agreement in question governs the claims brought in this case for breach of fiduciary duty, for violations of duties of loyalty, good faith, and care under Article 4.07 of Puerto Rico corporate law, and for negligence and conversion under Article 1536, brought directly and derivatively.  It does not cover the Article 7.10 claims, which will be discussed in the next section. The Court additionally finds that the forum selection clause is mandatory, and the exclusive jurisdiction to entertain those claims lies with OCIF.   Therefore, all claims (except for the Article 7.10

claims brought under Puerto Rico corporate law) are DISMISSED WITHOUT PREJUDICE of being brought before OCIF.

### 5.  Article 7.10 claim.

Lastly, Plaintiff brings a claim under Article 7.10 of the Puerto Rico General Corporations Act, averring that Defendant has failed to give it access to the Bank's books and records.  Plaintiff's position is that the statute is unconstitutional because it divests this Court of jurisdiction it otherwise possesses, but somewhat confusingly, bases its argument on the fact that the statute states that it should be litigated before the state court.  In other words, it argues the statute mandates Article 7.10 claims be litigated in a court of law, but one of its choosing, the federal forum, and not in the state forum as called for in the statute.  In the alternative, Plaintiff posits that this Court can hear these claims by exercising its supplemental jurisdiction.  Defendant's position is that Puerto Rico law gives exclusive jurisdiction over this claim to the Puerto Rico Court of First Instance, and must therefore be dismissed.  The Court declines Plaintiff's invitation.

The statute in question states:

> If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section . . . the stockholder may apply to the Court of First Instance (Superior Part) for an order to compel such inspection. The Court of First Instance (Superior Part) is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought.
> P.R. Laws Ann. tit. 14, § 3650(c).

Plaintiff's argument that this aforementioned statute is unconstitutional consists of three (3) sentences without any developed argument, and is therefore deemed waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Undaunted, Plaintiff avers that the Court can nevertheless hear these particular claims under supplemental jurisdiction. This argument fails on two (2) fronts. First, this case was brought before the Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and all claims are based on state law. The claim was therefore properly brought before the Court, and there is no federal claim that was dismissed that would enable the Court to "exercise" its supplemental jurisdictional authority over this particular state law claim.

Second, the Court is bound by the same analysis already mentioned above regarding the forum selection clause. The statute's language indicates mandatory and not permissive action, and vests *exclusive* jurisdiction in the Puerto Rico courts to entertain claims pertaining to corporate books and records such as the ones brought here. <u>See</u> <u>Samalot-Martínez v. Norwegian Cruise Line Holdings, Ltd.</u>, Civil No. 23-1514 (RAM), 2024 WL 310408, at *2 (D.P.R. Jan. 26, 2024) (mandatory clauses dictate the "exclusive forum for litigation"); <u>Tantalos</u>, 651 F.Supp.3d at 495 (words "shall" and "exclusively" are deemed mandatory); <u>see</u> <u>also</u> <u>Domenech v. Integration Corp.</u>, 187 D.P.R. 595 (2013) (noting that if a corporation impedes a records inspection, a shareholder may petition the Court of First Instance, who has exclusive jurisdiction, for an order). Thus, this forum lacks jurisdiction to hear the Article 7.10 claims.

In view of the above, jurisdiction over the Article 7.10 claims brought under Puerto Rico corporate law lies exclusively with the Puerto Rico Court of First Instance. Consequently, this claim is DISMISSED WITHOUT PREJUDICE of being brought before that forum.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED.  (Docket No. 38).  Accordingly, the Article 7.10 claims brought under Puerto Rico corporate law are DISMISSED WITHOUT PREJUDICE of being brought before the Puerto Rico Court of First Instance and all other claims are DISMISSED WITHOUT PREJUDICE of being brought before OCIF.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 11th day of July 2024.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE